IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DOUG P. LAMORE,

                    Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

OPINION AND ORDER

18-cv-270-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Doug B. Lamore contends that he has been disabled since March 17, 2014 by Type I diabetes that is hard to control, as well as by unspecified arthralgia and neuralgia. The administrative law judge hearing his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g), denied it after concluding that, although plaintiff had the impairments he alleged, he retained the residual functional capacity to perform work at a medium level, with certain qualifications. For the reasons set out in this opinion, I am affirming the administrative law judge's conclusion that plaintiff's impairments do not limit his ability to do medium work.

The following facts are drawn from the administrative record (AR).

1

FACTS

A. <u>Plaintiff's Social Security Application and Background</u>

Plaintiff Doug Lamore was born on July 20, 1964 and was 49 on his alleged disability onset date of March 17, 2014. Since then, he has not engaged in substantial gainful activity. He receives long-term disability benefits from a prior employer of $3,095.00 a month. AR 150-51.

Plaintiff filed for disability insurance on June 2, 2014, alleging disability resulting from Type I diabetes, unspecified arthralgia and neuralgia. After his claim was denied initially and upon reconsideration, he requested a hearing. An administrative law judge held a hearing on January 3, 2017 and denied plaintiff's claim on February 28, 2017, in a written opinion. AR 19-29. Plaintiff sought review of the decision from the Appeals Council, but his request was denied on February 23, 2018, AR 1-3, making the hearing decision defendant's final decision.

At the hearing before the administrative law judge, plaintiff testified that he had left his job as a maintenance technician in 2014 because he could no longer control his diabetes and, as a result, was incapacitated three to four times a week from having blood sugar that was either too high or too low, AR 38, and caused him bouts of dizziness and bumping into walls. AR 41. He said that when this was happening, he could do nothing for relief but sit. <u>Id</u>. On one occasion, his dizziness had lasted as long as eight hours. AR 42. He also said he had problems with his hands and feet that were the result of neuropathy and caused him constant pain in his feet and intermittent pain in his hands that made him feel as if pins were stabbing him in the bottoms of his fee or the tips of his fingers, AR 45, and that this reacion

tended to occur when he was having an insulin reaction. AR 45. He classified this pain as about a two or four. AR 42.

Plaintiff also testified that he had kidney disease that had been classified as stage II, but had recently been re-assessed as stage 1, and he had depression that "kept him down" and required medication. Id. Before he stopped working, he had obtained this medication from a pychiatrist, but was now receiving it from Dr. Keller, his primary care physician. AR 39-40.

Plaintiff said that he had tried to commit suicide in 2013, but had not made any attempts since then, AR 42, although he said he still thought about it approximately once a week. AR 43. He said that he finds the medication he takes for his depression helpful and that he tended to his own personal needs without assistance unless he is having an insulin reaction, in which case he needed his wife's help to help him become steady and get him some food. Id. On a typical day, plaintiff watches out for his daughter, who is autistic, and helps clean up the house and do laundry. AR 44.

Plaintiff completed high school and spent six months in tech school. From 2001 to 2014, he worked as a maintenance technician, repairing equipment, which sometimes required him to lift as much as 75 pounds. AR 36-37. He left the job to go on disability, when he felt he could no longer do the work because of his diabetes. AR 37, 44.

### B. Plaintiff's Medical History

Plaintiff has a number of medical problems, starting with his long history of Type I diabetes mellitus. He is considered a "brittle diabetic," because of wide swings in his blood

glucose levels, of which he is generally unaware. This is because the dropping levels fail to trigger the secretion of epinephrine, which generates the characteristic symptoms of hypoglycemia. AR 38, 41. He was hospitalized for this problem on August 10, 2015. AR 498. In addition to his diabetes, plaintiff suffers from the severe impairments of unspecified arthralgia (joint pain), AR 39, and neuralgia (abnormal dermal sensation). He also has depressive symptoms that began in 2011.

Plaintiff also has mild (stage II) kidney disease, chronic recurrent depressive disorder, vitamin D deficiency and other problems, AR 288-89, but he does not contend that any of these is a severe impairment or that it results in any more than minimal limitation on his ability to perform basic mental work activities. He has been seen for his diabetes, arthralgia and neuralgia by Drs. Michael Keller, Mandeep Brar and Nina Guseva.

1. Dr. Michael Keller, M.D.

The record includes relevant reports from Dr. Keller of his scheduled contacts with plaintiff for the period from March 2015 through July 26, 2016. For example, he wrote on March 27, 2015, that plaintiff had reported frequent fluctuations in his blood sugar and secondary loss of consciousness, no foot ulcer, but some tingling in his foot. AR 312. On examination, Dr. Keller found that plaintiff had normal gait and station, but "abnormal sensation; mild diminished sensation BL feet." AR 312. On June 25, 2015, plaintiff's examination results were similar: he had normal gait and station, some abnormal sensation and mild diminished sensation in both feet bilaterally. AR 309.

On March 15, 2016, Dr. Keller assessed no limitations on plaintiff's ambulation. AR 394. He reached the same conclusion on July 26, 2016, and also found that plaintiff had no tremor relating to his coordination and ambulation. AR 386. Again, on September 20, 2016, the doctor reviewed plaintiff's neuropathy and found he had no tremor and no limits on his ambulation. AR 378. On the same day, Dr. Keller found that plaintiff's medical record showed improved diabetes control. AR 375.

However, in a Disability Impairment Questionnaire signed on October 19, 2015, Dr. Keller reported that plaintiff had diabetes with neuropathy, gait disturbance, frequent hypoglycemia and chronic kidney disease, stage 2. AR 327. He added that plaintiff had neuropathy with daily pain in his feet and legs, along with numbness and being off balance, AR 328, with the result that he could not perform a job in any position, whether seated, standing or walking, for more than an hour. The doctor added that plaintiff could lift or carry no more than five pounds and could do that only occasionally, AR 329. It was his opinion that plaintiff had significant limitations in reaching, handling or fingering and would need unscheduled breaks at unpredictable intervals, AR 330, and that plaintiff's symptoms would be likely to increase if he were placed in a competitive work environment. Id. Finally, Dr. Keller wrote that emotional factors caused by plaintiff's fluctuating blood sugar contributed to the severity of his situation and that these symptoms and limitations applied as far back as plaintiff's March 17, 2014 onset date. AR 331.

2. <u>Dr. Mandeep Brar, M.D.</u>

Dr. Mandeep Brar, an endocrinologist, saw plaintiff on referral from Dr. Keller, for followup of plaintiff's diabetic oculopathy. AR 441. On January 12, 2016, plaintiff told Dr. Brar that he had had an increase in "hypoglycemic events" since his last visit and these were causing him "increased concerns and symptoms." AR 442. Dr. Brar found plaintiff "healthy-appearing, well nourished, and well-developed," with normal ambulation, AR 443, gait and station. AR 444. Brar reached the same conclusions when he saw plaintiff on February 23, 2016, AR 438-39; on April 6, 2016, AR 427-29; June 14, 2016, AR 424-26; and July 19, 2016, AR 412-415. At the July 19 examination, Dr. Brar administered a monofilament wire test on plaintiff's feet and found the results normal. AR 414.

In a statement to Aetna Life Insurance Company, Dr. Brar wrote that plaintiff could not perform any manual labor, because he could not do any one of a long list of activities, including sitting, standing, walking, climbing, crawling or lifting a weight of one pound or more. AR 451. In addition, the doctor found that plaintiff could not operate a motor vehicle or power tools and should not be exposed to heat, cold, dampness, noise, dust, fumes, chemicals or radiation. <u>Id</u>.

3. <u>Dr. Nina Guseva, M.D.</u>

Dr. Guseva saw plaintiff at an endocrine clinic for his diabetes from April 26, 2013 through October 24, 2014. (It appears that her name changed from Rosano to Guseva after that time.) She recommended on several occasions that plaintiff make lifestyle changes, such

6

as increasing his oral hydration, exercise and increase his physical activities "as tolerated." E.g., AR 233, 266. She worked with him on his use of an insulin pump, AR 231, 234, and noted in April 2014 that his pump results showed better control of his blood glucose, but that he had not done "his labs" and that he had "lost his papers." AR 234. However, she noted that his diabetes remained "uncontrolled with A1C of 9.1." Id. ("A higher A1C percentage corresponds to higher average blood sugar levels." https:/www.mayoclinic.org/tests-procedures/a1A1C test/about/oac-20384643.) On November 11, 2016, Dr. Guseva completed a Diabetes Impairment Questionnaire, in which she wrote that plaintiff had difficulty thinking and concentrating, AR 360, and that he could work in a seated or standing position for four hours, if he had breaks for blood glucose checks. AR 361. From what I can make out from her handwritten report, she believed that if plaintiff were to try to work, he would frequently experience pain, fatigue or other problems that would interfere with his attention and concentration, AR 362, and he would be absent from work more than three times a month. AR 363.

C. Non-treating Physicians

1. Dr. Beverly Yoches

Psychologist Dr. Yoches saw plaintiff for an evaluation on November 15, 2014, at the request of the Arizona Department of Economic Security. AR 273. Plaintiff told Dr. Yoches that he was married and the father of two children, he had few close friends, had four dogs he cared for, enjoyed playing the guitar and suffered from diabetes and celiac disease. AR 275-76.

He said he helped his wife with housework and laundry and spent time with his autistic daughter, sometimes hung out with a friend who fixes cars and accompanied his wife when she took their daughter to school. Id. He said he had never been fired from a job, had held consistent employment throughout adulthood and had been given a diagnosis of anxiety and depression by his primary care provider in 2011. Id. He added that he had had one psychiatric hospitalization, in April 2013, for a "suicidal gesture," and had been prescribed Pristiq and Clonazepam, which he had taken consistently since then. AR 274-75. He received psychiatric treatment for his depression from May 2013-October 2013, found it helpful and had not received any additional treatment since then. AR 275.

During his interview with Dr. Yoches, plaintiff denied that he had problems with sleeping, anger, self-control, concentration, memory or psychosis. AR 275. He did report depressive symptoms of generalized anxiety disorder, restlessness or feeling "on the edge," muscle tension and sleep disturbance and he said he had problems with depression, with symptoms almost every day, along with depressed mood, increased withdrawal and recurrent suicidal ideation. Id. He said he woke up each day at 6:00 a.m. and drank coffee, ate once a day, at 7:00 p.m., and went to bed around midnight. AR 276.

Dr. Yoches found plaintiff's thought processes to be linear, logical and goal directed; he had no apparent problems with apprehension; he scored 30/30 on the MMSE (the Mini-Mental State Exam); and his emotional state was euthymic, id., that is, his mood was one "of well-being and tranquility," American Psychological Association Dictionary of Psychology, 2d Ed. She found also that plaintiff had unspecified anxiety and major depressive disorder,

recurrent, unspecified. AR 278.

2. Rosalia Pereyra, Psy. D.

State agency psychologist Rosalia Pereyra prepared a form titled Medically Determination Impairments and Severity for plaintiff, in which she found that he had non-severe mental impairments, no limitations in terms of daily living, social functioning, concentration, persistence and pace and no repeated episodes of decompensation. AR 56.

3. Dr. Mary Downs, Ph.D.

In March, 2015, Mary Downs, Ph.D., another non-examining state agency doctor, affirmed Dr. Pereyra's opinion, finding that additional information from Dr. Nina Guseva on a November 11, 2014 Diabetes Impairment Questionnaire did not support a finding that plaintiff's mental condition had worsened or that plaintiff had significant functional limitations that would preclude his participation in significant gainful employment. AR 69.

4. Dr. Robert Quinones

In November 2014, Dr. Quinones, a reviewing state agency consultant and physician, found from his assessment of plaintiff that his statements about the intensity, persistence and functional limiting effects of his symptoms were not substantiated by the objective medical evidence. AR 57. He found plaintiff only partially credible and concluded that he had no exertional limitations, but did have postural limitations: he could occasionally climb ramps

9

or stairs, balance, crouch and crawl, frequently stoop and kneel and never climb ladders, ropes or scaffolds. Id. Quinones added that plaintiff had no manipulative, visual, communicative or environmental limitations, but that he should avoid even moderate exposure to hazards. Id.

5. Dr. Jerry Dodson, M.D.

Plaintiff's request for reconsideration of Dr. Quinones's opinion was denied by yet another agency consultant, Dr. Jerry Dodson, who noted that plaintiff was not contending that his condition had worsened since the earlier denial of his claim. In addition, Dodson found that there "did not appear to be any significant co-morbid conditions resulting from [plaintiff's diabetes mellitus] at the time." AR 66.

D. Vocational Expert

Vocational expert Shirley Ripp testified at the administrative hearing that plaintiff could no longer do any past relevant work, primarily because his past work had involved heavy machinery. AR 46. However, she found that plaintiff could perform other jobs classified as medium, such as sandwich maker, of which there are 53,634 jobs nationally, AR 47-48, and laboratory equipment cleaner, of which there are 50,133 jobs nationally. AR 48. In addition, Ripp testified that plaintiff could perform a number of jobs classified as light, including 597,677 jobs as a cashier II position and 59,986 jobs as a cafeteria attendant and that none of these would expose him to concentrated exposure to fumes, odors, dust or gases. Id. She

also testified that a person who had frequent interference with concentration and attention because of severe pain and fatigue, requiring extensive breaks or if the person were off work three or more days a week, could not sustain employment. AR 49.

E. Administrative Law Judge's Findings

The administrative law judge found that plaintiff had the severe impairments of diabetes mellitus, as well as unspecified arthralgia and neuralgia, but concluded that he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 21-22. Moreover, plaintiff had the residual functional capacity to perform medium work, as defined in 20 C.F.R. 404.1567(c). Specifically, he could lift or carry 50 pounds occasionally and 25 pounds frequently, could stand or walk six hours in an eight-hour day and sit for six hours in an eight-hour day. In addition, he could occasionally climb stairs and ramps but never ladders, ropes or scaffolds and could occasionally stoop, kneel, crouch and crawl, and he should avoid concentrated exposure to extreme cold, fumes, odors, dust and cases, moving and dangerous machinery and unprotected heights.

The administrative law judge also found that although plaintiff had other medically determinable conditions (stage II kidney disease, vitamin D deficiency, hypothyroidism, insomnia and celiac disease), his medical record was not sufficient to establish that these conditions imposed any significant limitations on his ability to perform basic work activities. In addition, although plaintiff had the mental impairments of anxiety and depression, he had no limitations in any of the four broad areas of mental functioning, as set out in the disability

regulations for evaluating mental disorders and in 20 C.F.R. Part 404, Subpart P, Appendix 1. The administrative law judge concluded that whether these conditions were considered independently or in combination, they did not cause plaintiff more than mild limitations in his ability to perform basic mental work activities.

The administrative law judge reviewed the handwritten answers to questionnaires submitted by treating doctors Keller, Brar and Guseva, to the effect that plaintiff was not capable of performing full-time work, concluding that they deserved no weight because they "were inconsistent with" the records of their examinations of plaintiff, which had shown "generally normal results, even as to his gait." AR 26-27. Although plaintiff had severe impairments, his medical examinations showed that his diabetes mellitus, unspecified arthralgia and neuralgia did not cause him more than "mild" limitations in any of the functional areas and, as a result, must be considered non-severe. AR 27. For example, at both an April 2014 and a May 2014 examination, Dr. Keller had found no significant cardiovascular, pulmonary, musculoskeletal, skin or psychiatric problems, AR 220- 23, 216-19.

Moreover, plaintiff had seen Dr. Guseva (f/n/a Rosano), on eight occasions at the Endocrine Specialty Clinic, with the last one on October 24, 2014. These sessions included discussions about plaintiff's need to be compliant with his "medication and lifestyle modifications,"AR 225-48, and efforts by the doctor to educate plaintiff on the use of his insulin pump, e.g., AR 227, 237-38, 239-40 & 241.

Plaintiff was seen by Dr. Brar at the VHS Clinics more than 20 times between March 2015 and September 2016, AR 284, 288, 293-94, 207-98, 301-02, 305, 309, 378, 382 and 313

and the results were unremarkable. The administrative law judge found that the opinions of Drs. Keller, Brar and Guseva were inconsistent with the reports that plaintiff provided of his daily activities. AR 27. He noted that when Dr. Guseva gave her opinion, she had not seen plaintiff for more than two years and that, when she had been seeing plaintiff, his condition was responding to insulin and he was taking it regularly. Id. He rejected her opinion that plaintiff would be limited to four hours of standing, walking or sitting in an eight-hour work day, would need frequent unscheduled breaks, would experience occasional to frequent pain and would miss work more than three times a month, id., noting that plaintiff's September 2016 medical records requested improved diabetes control. Id.

The administrative law judge denied plaintiff's claim. On review, the Appeals Council denied review of the claim, making the administrative law judge's decision the final decision of the Acting Commissioner.

OPINION

Plaintiff objects to what he calls the evidentiary gap created by the administrative law judge's rejection of the opinions set out in questionnaires submitted on plaintiff's behalf by plaintiff's treating physicians. He complains that "without the opinions of Drs. Brar, Guseva and Keller, as to Plaintiff's limitations and restrictions, all that remains are the medical record and the state agency physicians' evaluations, which found 'no exertional restrictions.' AR 27." In fact, the medical records are detailed and comprehensive. The administrative law judge gave careful consideration to the opinions set out by these doctors in their reports of the numerous

physical examinations of plaintiff between 2014 and 2016. What he did not credit were the questionnaire answers that conflicted with the doctors' contemporaneously recorded observations of plaintiff at their offices.

Plaintiff maintains that it is error for an administrative law judge to reject the opinions of treating physicians, but this is true only if the rejection is not supported by good reasons, clearly explained. "An ALJ may discount a treating physician's option if it is internally inconsistent or inconsistent with other substantial evidence , so long as the ALJ articulates his resons for giving the oinion less weight." Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010),In this case, the administrative law judge provided a thorough and persuasive explanation of his reasons for rejecting the answers to the questionnaires completed by the Drs. Keller, Brar and Guseva, which is that those answers did not correspond to the observations the same doctors had recorded in the course of treating plaintiff. In fact, their contemporaneous observations support a conclusion that plaintiff would be able to work at a medium level with specific postural limitations. Although he might be somewhat limited in his ability to work, his statements about the intensity, persistence and limiting effects of his symptoms were not consistent with the medical evidence and other evidence.

Plaintiff contends that it is error to say that his physical examinations were ever normal because his blood glucose levels were never at optimal levels and, he adds, his neuropathy caused him continuous pain in his feet. As the administrative law judge found, however, Dr. Guseva worked with plaintiff to find a pump that would help him control those levels and his regular examinations by Dr. Keller reveal that he rarely mentioned any pain or discomfort in his feet.

14

Moreover, his regular examinations generally showed that his gait, station, skin, reflexes and muscle tone were normal.

It is true that the court of appeals held in Engstrand v. Colvin, 788 F.3d 655 (7th Cir. 2015), that it is not necessary for a plaintiff to come forward with diagnostic tests in order to prove that he has neuropathic pain. It does not follow, however, that a simple allegation of pain is enough when, as in this case, the plaintiff's treating physician has tested him repeatedly and found only "mildly diminished sensation." AR 307. Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008).

According to plaintiff, the record supports a finding of disability in light of the references to hypoglycemic unawareness, his polyneuropathy, his stage II chronic kidney disease, his fatigue and his history of major depression. I have concluded that neither his hypoglycemia nor his polyneuropathy supports such a finding. As to his alleged chronic kidney disease, it has been characterized as mild. As to his history of major depression, he assured Dr. Keller on numerous occasions that the medication he was taking for his depression continued to be effective. His reports are consistent with Dr. Yoches's opinion that plaintiff appeared alert, oriented, cooperative and euthymic in the course of her interview with him.

Finally, plaintiff contends that the administrative law judge erred in not giving weight to the third party report prepared by plaintiff's wife, Catherine Lamore. The administrative law judge explained that he had concluded that Ms. Lamore was not qualified to provide opinions about plaintiff's diagnoses and functional limitations, particularly since she could not be considered an unbiased, disinterested third party. Plaintiff does not identify anything in his

15

wife's report that would require a different view of it. Additionally, Ms. Lamore's statement generally tracked her husband's allegations regarding his symptoms and daily activities. The administrative law judge explained why he found plaintiff's explanations inconsistent with the medical records and the opinions of the consulting physicians. It was not necessary for him to repeat this discussion when considering Ms. Lamore's statement. Curvin v. Colvin, 778 F.3d 645, 650 (7th Cir. 2015) (administrative law judge's decision should be considered "as a whole" to determine whether he considered all the evidence and gave supporting reasons for decision."

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Doug P. Lamore's application for disability insurance benefits under §§ 216 and 223 of the Social Security Act, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 6th day of March, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge